**Rogelio Antonio BRUNO, Appellant,**

v.

**The STATE of Texas, Appellee.**

**No. 07–94–0159–CR.**

Court of Appeals of Texas,
Amarillo.

May 7, 1996.

Law Offices of Robert P. Abbott, Robert P. Abbott, Coppell, Law Offices of Michelle Phillips Scheef, Michelle Phillips Scheef, Richardson, for appellant.

Dallas County Criminal District Attorney, John Vance, Juan Suarez, John Dahill, Clark Metz, Dallas, for appellee.

Before REYNOLDS, C.J., and BOYD and QUINN, JJ.

QUINN, Justice.

Rogelio Antonio Bruno, appellant, appeals from a judgment convicting him of resisting arrest. He asserts two points of error, both of which involve the sufficiency of the evidence underlying his conviction. In particular, he questions the legal and factual sufficiency of the evidence illustrating that his use of force occurred while the police effected an arrest. We affirm the judgment.

### Standard of Review

As previously mentioned, appellant was charged with resisting arrest. To secure a valid conviction, the State had to prove that appellant intentionally prevented or obstructed someone he knew to be a police officer from effecting appellant's arrest by the use of force against the officer. *Mayfield v. State*, 758 S.W.2d 371, 374 (Tex.App.—Amarillo 1988, no pet.). Here, the jury concluded that each of the foregoing elements were established beyond reasonable doubt. In determining whether its verdict enjoyed the support of legally sufficient evidence, we ask if, after reviewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the offense beyond a reasonable doubt. *King v. State*, 895 S.W.2d 701, 703 (Tex.Crim.App.1995). If the answer is yes, then the evidence underlying the conviction is legally sufficient.

However, in assessing the verdict's factual sufficiency, we put aside the requirement that the evidence be viewed through a prism of light favorable to the State. Instead, our task is to peruse the entire record and decide whether the overwhelming weight of the evidence so contradicts the verdict as to make that verdict clearly wrong or unjust. *Clewis v. State*, 922 S.W.2d 126 (Tex.Crim. App.1996).

Finally, under both standards, the fact finder may still reasonably infer facts from the evidence before it, credit the witnesses it cares to, disbelieve any or all of the testimony proffered, and weigh the evidence in the manner it chooses. *Depauw v. State*, 658 S.W.2d 628, 633–34 (Tex.App.—Amarillo 1983, pet. ref'd). Indeed, these are the prerogatives of the fact finder as opposed to the reviewing court. We cannot usurp them.

### Evidence of Record

The controversy involved effort by a wrecker to tow away appellant's car. A disturbance soon arose. Two officers, in full uniform, responded. Upon arriving in their squad car, they repeatedly informed appellant, initially in English and then in Spanish, to leave the roadway and stay on the sidewalk. He was eventually escorted off the street and onto the walk twice by the officers and told to remain there. Neither time did he obey. As soon as the escorting officer would walk away, appellant would re-enter the street and resume arguing. A third-party also came to the assistance of the officers. The latter asked the individual to tell appellant, in Spanish, to "stay out of the street until [they] finished with what [they] were doing."

Eventually, the wrecker was allowed to leave with the car. At this point, the officers intended to document the incident and cite appellant for standing in a roadway when sidewalks were available.[1] When they asked for his name, in English and Spanish, he turned and quickly moved away. Witnessing this, the officers reached for and grabbed his arms or wrists and endeavored to stop him. Appellant responded by twisting free and pushing one of the policemen in the chest. The officer who appellant pushed allegedly lost his footing. Thereafter, appellant flailed his arms about to prevent the officers from hand-cuffing him. Within fifteen seconds, however, they had him subdued.

---

1. Section 552.006 of the Texas Transportation Code prohibits a pedestrian from walking along or on a roadway if an adjacent sidewalk is provided. Those found violating the statute are subject to arrest without warrant. *Tex.Transp.Code Ann.* § 543.001 (Vernon Pamph.1996); *Williams v. State*, 905 S.W.2d 49, 51 n. 4 & 5 (Tex.App.— Houston [1st Dist.] 1995, no pet.) (involving article 6701d, §§ 147 & 148 of the Texas Revised Civil Statutes Annotated, the predecessors to §§ 543.002 and 543.003 of the Transportation Code). They avoid being taken into custody by signing a notice to appear in court as prepared by the officer. *Tex.Transp.Code Ann.* § 543.005.

The officers admitted that they did not have their "citation book" in hand when they solicited appellant's name and birthdate. Instead, the appropriate procedure called for them to first obtain the suspect's name and birthdate, then enter it into their police computer before issuing the citation. So too did they agree that they did not intend to "arrest" appellant, but rather to release him once he received the citation. Yet, their mindset changed when he walked away without answering their questions and ignored their demands to stop.

Others testified that appellant had difficulty hearing, that he only entered the street once and that was to secure a book from his vehicle, that the officers made no effort to talk to appellant, and that the officers never directed appellant off the street or onto the sidewalk. Nor did appellant ever attempt to elude or resist the officers, according to the appellant's witnesses. From their perspective, the policemen simply grabbed him from behind, handcuffed him, placed him against the hood of their car, picked him up by the handcuffs only to drop him, and struck him with their knees.

### Application of Evidence to Standard of Review

Appellant challenges nothing other than the conclusion that the officers were "effecting an arrest" at the time he pushed them. Thus, we need not analyze whether the evidence established, beyond reasonable doubt, the other elements of the offense.

With regard to his specific contention, he decries the lack of evidence of an arrest at the time of the pushing. At that instant, the officers were simply considering whether to issue him a citation, according to appellant. No one had "pulled out" a "ticket book" nor said anything about an actual arrest.

■ Whether appellant is correct depends upon the meaning of "effecting an arrest." Previous courts which have considered the matter held that it connotes the process or transaction involved in securing control over the person. *Schrader v. State,*

753 S.W.2d 733, 735–36 (Tex.App.—Austin 1988, pet. ref'd) (construing it as the "*experiential process* " by which control of the person is obtained); *see White v. State,* 601 S.W.2d 364, 366 (Tex.Crim.App.1980) (noting that the force occurred while the arrest was "taking place"). Furthermore, our legislature has dictated that a person "is arrested" (past tense) "when ... actually placed under restraint or taken into custody" by an officer or another with or without a warrant. *Tex. Code Crim.Proc.Ann.* art. 15.22 (Vernon 1977); *White v. State,* 601 S.W.2d at 365. From this, we may conclude that the officer is no longer "effecting an arrest" once his efforts to actually restrain or control the individual are complete. *Schrader v. State, supra; see Young v. State,* 622 S.W.2d 99 (Tex.Crim.App.1981) (holding that force exerted against an officer after an arrest is complete cannot be used as the basis for prosecuting one for resisting arrest). So too may we extrapolate that from the instant the officer begins his efforts to gain control or physical restraint over the individual until the restraint is perfected, he can be considered "effecting an arrest." *Schrader v. State, supra.* Incidentally, the process is not dependent upon the officer verbalizing his intention to arrest, *White v. State,* 601 S.W.2d at 366, though his having a pre-existing intent to arrest coupled with some action taken pursuant to that intent is necessary. *See Leos v. State,* 880 S.W.2d 180 (Tex.App.—Corpus Christi 1994, no pet.) (wherein the force occurred after the officer revealed his intent not to arrest but only to frisk).[2]

■ Simply put, the officers testified that as appellant walked away, they formulated an intent to stop him and arrest him for walking on a roadway adjacent to a sidewalk. That was within their prerogative. *Tex. Trans.Code Ann.* § 543.001 (Vernon Pamph. 1996). The two officers then manifested their intent by pursuing and laying hands on appellant. At that point, a reasonable jury could conclude that the policemen were effecting an arrest. However, their control over appellant was not complete as illustrat-

---

**2.** Indeed, one is left to wonder how an officer can be considered to be "effecting an arrest"

unless or until he performs some act to restrain the individual.

ed by his twisting free and pushing one of the officers in the chest. Thus, a rational juror could also conclude, from the evidence that the force in question arose while an arrest was taking place.

That the testimony provided by appellant's witnesses tended to contradict these findings does not mandate reversal. It merely created a fact issue for the jury to decide. And, we cannot say that the manner in which they decided it was against the great weight of the evidence.

Nor do the facts that neither officer had their "ticket book" in hand or informed appellant that he was under arrest compel a different result. Procedure dictated that they first acquire his name to enter in their computer, then issue the citation, and they were doing so when appellant decided to bolt.

Moreover, the officers were not obligated to orally admonish him prior to making the arrest. *White v. State, supra.* Indeed, whether he realized it or not, appellant was in the process of being arrested as the officers contemplated whether to cite him. Such a conclusion is inescapable given the purposes underlying a citation. The latter not only informs the accused of the charge levied against him and the time and place at which he must appear to answer that charge, *Tex. Transp.Code Ann.* § 543.003 (Vernon Pamph.1996), but also serves to secure his release once the accused signs the citation. *Id.* at 543.005. Logically, one cannot, nor need not, secure his release unless he is in the throes of restraint. And, in issuing the citation, the officer terminates the restraint. *See id.* (stating that the officer "shall then promptly release the person from custody" once the written promise to appear is executed); *Sedani v. State,* 848 S.W.2d 314, 317–18 (Tex.App.—Houston [1st Dist.] 1993, pet. ref'd) (holding that the officer may not further detain or "re-arrest" the individual once the citation has issued unless a second offense is spied). Issuing the citation also terminates the officer's ability to physically control the accused since he must then be allowed to leave. So, until appellant was cited and allowed to leave, he was undergoing an arrest. Since the officers attempted to gain actual physical control over him dur-ing the process, they were effecting an arrest, that is, perfecting the restraint. *Schrader v. State, supra.*

Accordingly, we overrule appellant's two points of error and affirm the judgment.