NO. 12-02-00351-CR



IN THE COURT OF APPEALS
 


TWELFTH COURT OF APPEALS DISTRICT



TYLER, TEXAS


RODERICK EDWARD LATHAM,
§
 APPEAL FROM THE 

APPELLANT


V.
§
 COUNTY COURT OF


THE STATE OF TEXAS,

APPELLEE
§
 UPSHUR COUNTY, TEXAS

 

OPINION


 Roderick Edward Latham ("Appellant") appeals his conviction for resisting arrest. In two
issues on appeal, Appellant asserts that the evidence is not legally or factually sufficient to support
his conviction. We affirm.


Background

 Appellant was charged by information with resisting arrest. (1) Appellant pleaded not guilty
and elected a trial by jury. At trial, Jeffrey Scott Moore ("Moore") testified that, in July of 2002, he
was a peace officer with the Upshur County Sheriff's office, working as a patrol deputy. On July
18, at approximately 10:43 p.m., he was dispatched to the residence of Appellant and his wife, Tonya
Latham ("Tonya"). When Moore arrived at the residence, he pulled into the driveway, and a truck 
driven by Tonya pulled in behind him. Tonya told him that Appellant was in the house, that he was
tearing up the house, and that he was "acting crazy." Tonya explained that Appellant had come out
of the house and chased her with a pool stick. Moore entered the house cautiously, listening
carefully, but heard nothing. He began to identify himself, calling out as he systematically went
through the house, but there was no response. In his search, Moore discovered the bottom half of
a pool stick lying near a hallway in the living room.

 Moore found Appellant lying on a bed, breathing very hard, and sweating. Moore asked
Appellant what had happened, and Appellant responded by asking, using expletives, what Moore
was doing in his house. Moore considered the manner of Appellant's response unusual. Moore
explained that Tonya had called the sheriff's office, and that he was attempting to find out what had
occurred. Appellant continued to curse at Moore, stating that Moore needed to get out of his house.
Appellant became excited, sat up, and physically became rigid with clenched fists. Moore told
Appellant to calm down, attempting to avoid a confrontation and stall for time until his backup
arrived.

 At that point, Appellant began asking where Tonya was, but Moore told Appellant that he,
Appellant, needed to talk to Moore. Appellant continued to curse. Moore informed Appellant that
he was going to handcuff Appellant for their safety until he determined what had occurred. 
Appellant angrily objected, yelled for Tonya, and rushed Moore. Moore was standing partly in the
doorway of the bedroom, and reached out to grab Appellant. However, Appellant pushed his left
forearm into Moore's chest area, shoving him out of the way.

 Appellant began to walk down the hallway quickly with Moore following him and telling him
to stop, put his hands behind his back, and comply with his requests. Moore attempted to grab
Appellant several times, but Appellant shrugged and pulled away from him. Appellant went out the
front door, continuing to curse Moore, shouted for Tonya, and began looking around. According to
Moore, Appellant was in a threatening posture, clenched over with his arms bowed. Moore pushed
Appellant down, attempting to subdue and handcuff him. However, Appellant got up, turned around,
and faced Moore. Moore again told Appellant to comply with his instructions, but Appellant
continued to curse at Moore.

 At that moment, Moore believed that his safety was in danger because he was the only officer
at the scene, and they were ten feet or less from the porch where a machete was located. As a result,
Moore pepper sprayed Appellant. Moore continued to instruct Appellant to "get down," but he did
not. In response, Moore again pushed Appellant, and he fell to his knees. Finally, Appellant
complied with Moore's instructions, and put his hands behind his back. However, Appellant's hands
were still clenched and he continued to curse. After Moore handcuffed Appellant's left wrist and
was attempting to handcuff his other wrist, Appellant began to pull away, pull forward, and resist.
Appellant and Moore wrestled for a time, but eventually Moore handcuffed Appellant's other wrist. 

 Moore informed Appellant that, if he would calm down and relax, Moore would get a water
hose and wash the spray from his eyes. Appellant continued to curse and then spit in Moore's face.
Moore took his eyeglasses off to remove the saliva and, as he was putting them back on, he noticed
Appellant attempting to stand. Moore ran to Appellant, lunged forward, and knocked him to the
ground. Although Appellant continued to curse, he did not try to get up again. Moore's backup,
Deputy Wade Davis ("Davis"), arrived and transported Appellant to the jail. Moore testified that
because of Appellant's behavior, attitude, and physical demeanor, he does not believe he would have
allowed Appellant to leave the bedroom if Appellant had not used force against him. In his
testimony, Moore used the term "arrest situation" while explaining the procedure a peace office must
follow regarding the preparation and filing of a report. The jury found Appellant guilty, and assessed
punishment at 180 days in jail. This appeal followed.


Evidentiary Sufficiency

 In two issues, Appellant argues that the evidence was not legally or factually sufficient to
support a conviction for resisting arrest. Appellant contends that the encounter between him and
Moore was not an arrest, nor could a reasonable person in his position discern that Moore was
attempting to effect an arrest. The State argues that, when Appellant struck Moore in the chest, the
officer was authorized to arrest him. Further, the State contends that when Appellant wrestled with
Moore after the assault, he was resisting arrest.

Standard of Review

 "Legal sufficiency is the constitutional minimum required by the Due Process Clause of the
Fourteenth Amendment to sustain a criminal conviction." Escobedo v. State, 6 S.W.3d 1, 6 (Tex.
App.-San Antonio 1999, no pet.) (citing Jackson v. Virginia, 443 U.S. 307, 315-16, 99 S. Ct. 2781,
2786-88, 61 L. Ed. 2d 560 (1979)). The standard of review is whether any rational trier of fact could
have found the essential elements of the offense beyond a reasonable doubt. Jackson, 443 U.S. at
319, 99 S. Ct. at 2789; LaCour v. State, 8 S.W.3d 670, 671 (Tex. Crim. App. 2000). The evidence
is viewed in the light most favorable to the verdict. Jackson, 443 U.S. at 319, 99 S. Ct. at 2789;
LaCour, 8 S.W.3d at 671. The conviction will be sustained "unless it is found to be irrational or
unsupported by more than a 'mere modicum' of the evidence." Moreno v. State, 755 S.W.2d 866,
867 (Tex. Crim. App. 1988). The jury is the sole judge of the credibility of witnesses and of the
weight to be given their testimony. Barnes v. State, 876 S.W.2d 316, 321 (Tex. Crim. App. 1994). 
Any reconciliation of conflicts and contradictions in the evidence is entirely within the jury's
domain. Losada v. State, 721 S.W.2d 305, 309 (Tex. Crim. App. 1986). If a reviewing court finds
the evidence legally insufficient to support a conviction, the result is an acquittal. Tibbs v. Florida,
457 U.S. 31, 41-42, 102 S. Ct. 2211, 2217-218, 72 L. Ed. 2d 652 (1982). 

 After a reviewing court has found that the evidence is legally sufficient to support the verdict,
the court may go forward with a review of the factual sufficiency of the evidence. Clewis v. State,
922 S.W.2d 126, 133 (Tex. Crim. App. 1996). In reviewing factual sufficiency, a court examines
all the evidence "without the prism of 'in the light most favorable to the prosecution' and sets aside
the verdict only if it is so contrary to the overwhelming weight of the evidence as to be clearly wrong
and unjust." Id. at 134. The court must inquire whether a neutral review of all the evidence, both
for and against the verdict, establishes that the proof of guilt is so manifestly weak as to undermine
faith in the jury's resolution, or the proof of guilt, although sufficient if taken alone, is greatly offset
by conflicting proof. Johnson v. State, 23 S.W.3d 1, 11 (Tex. Crim. App. 2000).

 A proper deference should be demonstrated by the reviewing court in order to deter a court
from substituting its judgment for that of the fact finder, and any examination of the evidence should
not substantially intrude upon the fact finder's role as the exclusive judge of the weight and
credibility given to witness testimony. Id. at 7; Clewis, 922 S.W.2d at 133. Wrong and unjust
verdicts include ones in which the verdict is "manifestly unjust," "shocks the conscience," or "clearly
demonstrates bias." Santellan v. State, 939 S.W.2d 155, 165 (Tex. Crim. App. 1997). The
reviewing court examines all of the evidence in the record pertaining to the factual sufficiency
challenge, not just evidence confirming the verdict. Id. at 164. 

 In a criminal conviction, sufficiency of the evidence is determined by the elements of the
crime as defined by the hypothetically correct jury charge. Malik v. State, 953 S.W.2d 234, 240
(Tex. Crim. App. 1997). The correct charge "would be one that accurately sets out the law, is
authorized by the indictment, does not unnecessarily increase the State's burden of proof or
unnecessarily restrict the State's theories of liability, and adequately describes the particular offense
for which the defendant was tried." Id.

Elements of the Offense

 In order to convict an accused for resisting arrest under section 38.03 of the Texas Penal
Code, the State must prove beyond a reasonable doubt (1) that the accused intentionally (2)
prevented or obstructed (3) a person he knows is a peace officer (4) from effecting an arrest (5) of
himself (6) by using force against the peace officer. Vaughn v. State, 983 S.W.2d 860, 862 (Tex.
App.-Houston [14th Dist.] 1998, no pet); see Tex. Pen. Code Ann. § 38.03(a). It is no defense to
prosecution that the arrest was unlawful or arbitrary under the constitution. Tex. Pen. Code Ann.
§ 38.03(b); see Schrader v. State, 753 S.W.2d 733, 735 (Tex. App.-Austin 1988, pet. ref'd). In
applying section 38.03(a) of the Texas Penal Code, the essential inquiry is whether the actor has
forcibly interfered with a peace officer's "arrest" transaction or process to bring the actor under
control. Schrader, 753 S.W.2d at 735. The legislature intended the expression "effecting an arrest"
to encompass the reasonable actions or process of a peace officer bringing a person under the
officer's control for purposes of the law. Id.; see Bruno v. State, 922 S.W.2d 292, 294 (Tex. 
App.-Amarillo 1996, no pet.). From the moment the officer begins his efforts to gain control or
physical restraint over an individual until the individual is restrained or controlled, the officer can
be considered "effecting an arrest." Bruno, 922 S.W.2d at 294.

 Although it is necessary for the officer to have a pre-existing intent to arrest together with
some action taken pursuant to that intent, the process is not dependent upon the officer verbalizing
his intention to arrest. Id.; see White v. State, 601 S.W.2d 364, 366 (Tex. Crim. App. [Panel Op.]
1980). Although not conclusive, the officer's opinion as to whether the person was under arrest is
a relevant and important factor to consider. Vaughn, 983 S.W.2d at 862-63. Further, whether a
person is under arrest is determined by asking if a reasonable person would have believed he was
not free to leave in light of all the circumstances surrounding the incident. Wilson v. State, 943
S.W.2d 43, 45 (Tex. App.-Tyler 1996, pet. ref'd) (citing Gilbreath v. State, 412 S.W.2d 60, 61 (Tex.
Crim. App. 1967)). Application of the reasonable person standard in the context of an arrest
prevents a conviction based on a less intrusive type of seizure. Medford v. State, 13 S.W.3d 769,
773 (Tex. Crim. App. 2000).

 Whether a stop is an actual arrest or a detention also depends upon whether a reasonable
person would believe the seizure would be brief given the totality of circumstances. Vaughn, 983
S.W.2d at 862. Where no investigation is undertaken, the detention cannot be considered merely
investigatory and rises to the level of an arrest. Burkes v. State, 830 S.W.2d 922, 925 (Tex. Crim.
App. 1991); see Amores v. State, 816 S.W.2d 407, 412 (Tex. Crim. App. 1991)(concluding that a
detention could not be characterized as investigatory because no investigation was conducted). But
see Rhodes v. State, 945 S.W.2d 115, 119 n.4 (Tex. Crim. App. 1997) (rejecting the implication that
an investigatory detention is not valid unless the officer first asks questions of the detainee because
facts and circumstances may establish a detention as investigatory without such questioning).

 Force involved in the offense of resisting arrest must occur not only after the arrest begins,
but also before it ends. Lewis v. State, 30 S.W.3d 510, 512 (Tex. App.-Amarillo 2000, no pet.)
(citing Young v. State, 622 S.W.2d 99, 100 (Tex. Crim. App. 1981); Vaughn, 983 S.W.2d at 862)).
Further, "a person who uses force in order to shake off an officer's detaining grip, whether by
pushing or pulling, may be guilty of resisting arrest." Torres v. State, 103 S.W.3d 623, 627 (Tex.
App.-San Antonio 2003, no pet.); see Hopper v. State, 86 S.W.3d 676, 679 (Tex. App.-El Paso
2002, no pet.); Bryant v. State, 923 S.W.2d 199, 207-08 (Tex. App.-Waco 1996), pet. ref'd, 940
S.W.2d 663 (Tex. Crim. App. 1997). But see Leos v. State, 880 S.W.2d 180, 184 (Tex. App.-Corpus
Christi 1994, no pet.) (concluding that merely trying to flee, crawl away, or shake off a detaining grip
is not sufficient force against a peace officer to sustain a conviction for resisting arrest); Raymond
v. State, 640 S.W.2d 678, 679 (Tex. App.-El Paso 1982, pet. ref'd) (holding that merely pulling arm
away from officer not sufficient force to sustain a conviction for resisting arrest).

Analysis

 We must first determine whether Moore was effecting an arrest of Appellant. Although not
conclusive, Moore's opinion as to whether Appellant was under arrest is relevant and a factor to
consider. See Vaughn, 983 S.W.2d at 862-63. Based on Appellant's demeanor and actions, Moore
testified that he did not believe he would have allowed Appellant to leave the bedroom if force had
not been used against him. Further, Moore attempted to grab Appellant both in the bedroom
doorway and down the hallway, culminating in attempts to subdue and control him once in the yard
of the house. At one point in his testimony, Moore used the term "arrest situation" while describing
the procedures for preparing and filing a report. This reference would support an inference that he
considered Appellant to be under arrest. Thus, viewing the evidence in the light most favorable to
the jury's verdict, we conclude that a rational trier of fact could have found that Moore believed he
was effecting an arrest of Appellant.

 However, whether a person is under arrest is determined by asking if a reasonable person
would have believed he was not free to leave based on the circumstances of the incident. See
Wilson, 943 S.W.2d at 45. Moore tried to grab Appellant both in the doorway to the bedroom and
down the hallway in order to handcuff him. Further, Moore attempted to subdue and control
Appellant once outside the house, and did not allow Appellant to walk away from him. Based on
these circumstances, a reasonable person in Appellant's situation would have believed that he was
not free to leave. Whether a stop is an arrest or detention also depends upon whether a reasonable
person would believe the seizure would be brief given the totality of the circumstances. See
Vaughn, 983 S.W.2d at 862. Based on Appellant's behavior and actions after leaving the bedroom,
and Moore's attempts to grab, subdue, and control him, a reasonable person in Appellant's situation
would not have believed that the seizure would be brief. We conclude that, viewing the evidence
in the light most favorable to the verdict, a rational trier of fact could have found that a reasonable
person would not have believed that the stop was an investigatory detention given the totality of the
circumstances.

 Our last inquiry is, essentially, whether Appellant forcibly interfered with Moore's actions
or process of bringing him under Moore's control. See Schrader, 753 S.W.2d at 735. Appellant's
actions in shoving Moore from the doorway of the bedroom with his forearm, shrugging and pulling
away from attempts by Moore to grab him in the hallway, and pulling away from Moore while he
was attempting to handcuff Appellant are sufficient force against Moore to sustain a conviction for
resisting arrest. See Torres, 103 S.W.3d at 627; Hopper, 86 S.W.3d at 679; Bryant, 923 S.W.2d at
207-08. Based on our review of the record and viewing the evidence in the light most favorable to
the jury's verdict, we conclude that a rational trier of fact could have found the elements of resisting
arrest beyond a reasonable doubt. Accordingly, Appellant's first issue is overruled.

 Having determined that the evidence is legally sufficient to support the verdict, we address
factual sufficiency. During the incident, Moore never verbalized his intent to arrest Appellant. In
fact, Moore told Appellant that he was going to handcuff Appellant for their safety until he
determined what had occurred. Further, Moore never testified that he intended to arrest Appellant,
or that he considered Appellant to be under arrest. Similar to an investigatory detention, Moore
attempted to investigate the events of that evening, asking who had broken the pool stick and trying
to discuss the alleged events between Appellant and his wife earlier that evening. All this evidence
is in favor of Appellant. However, Moore was not required to announce that Appellant was under
arrest. See White, 601 S.W.2d at 366. Further, if little or no investigation has occurred, a detention
may rise to the level of an arrest. See Burkes, 830 S.W.2d at 925; Amores, 816 S.W.2d at 412.
Because of Appellant's behavior, demeanor, and subsequent actions, Moore was able to conduct
little, if any, investigation. In reviewing the entire record, both for and against the jury's verdict, we
do not find that proof of Appellant's guilt is so manifestly weak as to undermine faith in the jury's
resolution, or that the proof of guilt, although sufficient if taken alone, is greatly offset by conflicting
proof so as to render Appellant's conviction clearly wrong or manifestly unjust. Accordingly,
Appellant's second issue is overruled.


Conclusion

 Based upon our review of the record, we hold that the evidence is both legally and factually
sufficient to support the jury's verdict that Appellant was guilty of resisting arrest. Accordingly, the
judgment of the trial court is affirmed.



 DIANE DEVASTO 

 Justice



Opinion delivered January 30, 2004.

Panel consisted of Worthen, C.J., Griffith, J., and DeVasto, J.


(PUBLISH)
1. Tex. Pen. Code Ann. § 38.03(a) (Vernon 2003).