Opinion filed August 6, 2009











 
 
  
 
 







 
 
  
 
 




Opinion filed August 6,
2009

 

 

 

 

 

 

 

                                                                        In The

                                                                              

    Eleventh
Court of Appeals

                                                                  ___________

 

                                                          No. 11-08-00094-CR

                                                    __________

 

                                           HOPE COLE, Appellant

 

                                                             V.

 

                                        STATE
OF TEXAS, Appellee

 



 

                                        On
Appeal from the County Court at Law

 

                                                           Ector
County, Texas

 

                                                  Trial
Court Cause No. 07-3689

 



 

                                             M
E M O R A N D U M   O P I N I O N

The
jury convicted Hope Cole of the offense of resisting arrest, a Class A
misdemeanor.  The trial court assessed appellant=s
punishment at a $1,500 fine.  We affirm.

                                                                    Background








A
person commits an offense of resisting arrest Aif
[s]he intentionally prevents or obstructs a person [s]he knows is a peace
officer . . . from effecting an arrest . . . of the actor . . . by using force
against the peace officer.@ 
Tex. Penal Code Ann. ' 38.03 (Vernon 2003).  The
information alleged that appellant Aintentionally
prevent[ed] or obstruct[ed] JOE GALINDO, a person [appellant] knew             to
be a peace officer, from effecting an arrest of [appellant], by using force
against said peace officer.@ 


                                                                  Issue
on Appeal

In
her sole appellate issue, appellant challenges the factual sufficiency of the
evidence to support her conviction.  Appellant concedes that the evidence was
legally sufficient to support her conviction.   

                                                              Standard
of Review  

To
determine if the evidence is factually sufficient, the appellate court reviews
all of the evidence in a neutral light.  Watson v. State, 204 S.W.3d
404, 414 (Tex. Crim. App. 2006) (overruling in part Zuniga v. State, 144
S.W.3d 477 (Tex. Crim. App. 2004)); Johnson v. State, 23 S.W.3d 1, 10-11
(Tex. Crim. App. 2000); Cain v. State, 958 S.W.2d 404, 407-08 (Tex.
Crim. App. 1997); Clewis v. State, 922 S.W.2d 126, 129 (Tex. Crim. App.
1996).  Then, the reviewing court determines whether the evidence supporting
the verdict is so weak that the verdict is clearly wrong and manifestly unjust
or whether the verdict is against the great weight and preponderance of the
conflicting evidence.  Watson, 204 S.W.3d at 414-15; Johnson, 23
S.W.3d at 10-11.  The jury, as the finder of fact, is the sole judge of the
weight and credibility of the witnesses=
testimony.  Tex. Code Crim. Proc. Ann.
art. 36.13 (Vernon 2007), art. 38.04 (Vernon 1979).

                                                                Evidence
at Trial








The
record shows that the charge against appellant arose from an incident that
occurred at the Sherwood swimming pool in Odessa on August 5, 2007.  On that
date, appellant was at the pool with her baby daughter.  Lola Rivera and her
teenage sons, Kyle and Robert, also accompanied appellant to the pool.  At that
time, Efrain Moreno was working as the manager at the pool, Marty Jones was
working as an assistant manager at the pool, and Joshua Jimenez was working as
a deck supervisor at the pool.  While appellant=s
group was at the pool, a boy nearly drowned in the pool. Pool employees had to
rescue the boy from the water and resuscitate him.  During the rescue efforts,
one of the pool=s
lifeguards, Zach Dennis, went to the front area of the swimming pool complex to
retrieve a backboard, which is like a stretcher, in case it became necessary to
use it.  Ultimately, the boy was taken to the hospital in an ambulance, and
Odessa Police Officer Joe Galindo arrived at the pool to investigate the
near-drowning incident.

Following
the rescue of the boy, Moreno, Jones, and Jimenez were standing near each
other.  Jones testified that appellant approached them and asked to speak to a
manager.  According to Jones, appellant told him that a lifeguard had told her
kids in a rude way to get off the backboard.  Jimenez testified that appellant
told him that a lifeguard had yelled at her kid.  Jimenez also testified that
the lifeguard (Dennis) told him that a kid was on the backboard when he went to
retrieve it, that he had asked the kid to move, and that appellant had started
yelling at him when he asked the kid to move.  Jones said that appellant was
upset and that she was yelling.  Jones testified that appellant told them that
she did not want to be there because a Abunch
of idiots@ were
running the pool.  Moreno testified that, during this confrontation, appellant
was using Avulgar
language, and yelling, and swearing, and pointing at [the] lifeguards.@  Moreno said that
appellant was causing a Abig
old commotion@ and
that he asked her and her party to leave the pool.  Appellant and her group
left the pool.

Later,
appellant and her group returned to the pool with her husband Cody Cole. 
Moreno, Jones, and Jimenez talked with appellant and Cole.  Jones testified
that appellant wanted either to get her money back or for her kids to be
allowed to swim.  Jones said that pool employees were not allowed to give
refunds.  He said that appellant was still very upset and was yelling degrading
things to them.  Moreno testified that he would not let appellant and her group
inside the swimming pool gates.  At that time, Officer Galindo was in the pool
office  investigating the near-drowning incident. 

A
pool employee asked Officer Galindo for assistance in connection with the
situation involving appellant.  Officer Galindo left the office to check on the
situation.  He said that at least five to six people, including appellant, were
present and that, at first, they were all vocal.  Officer Galindo said
that appellant had a baby in her arms.  He also said that appellant Akept on mouthing off and
yelling, and screaming, and cussing.@ 
Officer Galindo testified that he told appellant to calm down and to be quiet and
that he asked her to stop cussing.  Officer Galindo said that, when he asked
appellant to stop cussing, she said that she was not scared to go to jail.  He
said that he asked her to stop cussing two times but that she did not stop. 
Officer Galindo testified that he asked appellant to identify herself and that
she responded, A[F]--k
you.@  Officer Galindo
said that appellant never calmed down.  Officer Galindo decided to arrest her
for disorderly conduct.








Officer
Galindo testified that, because he was going to arrest appellant, he asked her
to give the baby to someone else but that appellant refused to do so.  Officer
Galindo said that he grabbed appellant=s
wrist A[t]o get
control of her, to let her know that this arrest was going to be made.@  He also said that, at
that time, he did not tell appellant that she was under arrest.  Officer
Galindo testified that appellant pulled away from him and that someone grabbed
the baby from appellant.  He also said that appellant started swinging at him and
slapped him twice in the face.  Officer Galindo testified that he threw
appellant down to the ground.  He also testified that appellant struggled to
get away but that he was able to get her handcuffed.

Moreno,
Jones, and Jimenez were present during the incident involving Officer Galindo
and appellant.  In most respects, Moreno=s,
Jones=s, and Jimenez=s testimony about the
incident was consistent with Officer Galindo=s
testimony.  For example, they all testified that appellant was yelling and
cussing.  Jones said that Officer Galindo asked appellant several times to stop
cussing but that she did not stop.  He also said that Officer Galindo asked
appellant to put her baby down and that she refused.  Jones said that appellant=s baby was about three
years old.  Jones testified that Officer Galindo grabbed appellant=s hand after he had asked
her several times to put down the baby.  Jones said that appellant jerked her
hand back, that another lady grabbed the baby, and that appellant then hit
Officer Galindo in the face.  He also said that he saw appellant hit Officer
Galindo one time. Moreno testified that appellant hit Officer Galindo in the
face.  Moreno also said that he saw appellant punch Officer Galindo in the back
of the head a few times.  Jimenez testified that Officer Galindo grabbed
appellant=s arm and
that appellant then started fighting with Officer Galindo.  Jimenez said
that appellant hit Officer Galindo.  He also said that he did not know where
appellant hit Officer Galindo but that he saw her take swings toward his upper
body.








Lola
Rivera testified that Officer Galindo put his finger in appellant=s face a couple of times
and that appellant asked Officer Galindo not to put his finger in her face. 
Lola said Officer Galindo grabbed appellant=s
arm.  Lola also said that she never saw appellant hit Officer Galindo and that
appellant never swung her hand at him.  Kyle Rivera testified that Officer
Galindo put his finger in appellant=s
face and that appellant waived her hand in an attempt to get Officer Galindo=s finger out of her face. 
Kyle also said that appellant never hit Officer Galindo.  Cody Cole testified
that Officer Galindo put his finger in appellant=s face on two occasions and that appellant
told him to get his finger out of her face.  Cole also testified that appellant
waived her hands in front of her face when Officer Galindo put his finger in
her face.

                                                                        Analysis

Appellant
contends that the evidence was factually insufficient to establish that she
used force against Officer Galindo while he was effecting an arrest.  In
applying Section 38.03(a), the essential inquiry is whether the actor has
forcibly interfered with the Aarrest@ transaction or process to
bring the actor under control.  Latham v. State, 128 S.W.3d 325, 329
(Tex. App.CTyler 2004,
no pet.); Schrader v. State, 753 S.W.2d 733, 735 (Tex. App.CAustin 1988, pet. ref=d).  The legislature intended
the expression Aeffecting
an arrest@ to
encompass the reasonable actions of a peace officer in bringing a person under
the officer=s control
for the purposes of the law.  Latham, 128 S.W.3d at 329; Schrader,
753 S.W.2d at 735.  From the moment the peace officer begins his efforts to
gain control or physical restraint over the individual until the individual is
restrained or controlled, the officer is considered to be Aeffecting an arrest.@  Latham, 128 S.W.3d
at 329; Bruno v. State, 922 S.W.2d 292, 294 (Tex. App.CAmarillo 1996, no pet.).  

To
establish that an officer was in the process of Aeffecting
an arrest,@ the State
must prove that the officer had the intent to arrest and took some action
pursuant to that intent.  Latham, 128 S.W.3d at 329; Bruno, 922
S.W.2d at 294.  The process does not depend upon the officer verbalizing his
intention to arrest.  White v. State, 601 S.W.2d 364, 366 (Tex. Crim.
App. 1980); Bruno, 922 S.W.2d at 924.  Although not conclusive, the
officer=s opinion as
to whether the person was under arrest is a relevant and important factor to
consider.  Latham, 128 S.W.3d at 329; Vaughn v. State, 983 S.W.2d
860, 862 (Tex. App.CHouston
[14th Dist.] 1998, no pet.).








Officer
Galindo testified that he asked appellant to give her baby to someone else
because he was going to arrest her.  Officer Galindo said that he grabbed
appellant=s hand to
get control of her and to let her know that he was going to arrest her. 
Officer Galindo said that, in response, appellant pulled away from him and
slapped him in the face twice.  Jones testified that Officer Galindo
grabbed appellant=s
hand, that appellant jerked her hand back, and that appellant hit Officer
Galindo in the face.  Jimenez testified that Officer Galindo grabbed appellant=s arm and that appellant
then started fighting with Officer Galindo.  Based on the evidence, the jury
could have reasonably concluded that Officer Galindo was attempting to effect
an arrest of appellant when he grabbed appellant=s
hand and that appellant prevented or obstructed him from effecting the arrest
by striking him in the face.  Therefore, considering all the evidence in a
neutral light, we conclude that the evidence was factually sufficient to
support appellant=s
conviction.

Appellant
contends that the seven witnesses at trial gave Asignificantly
different versions of what happened.@ 
As the sole judge of the credibility of the witnesses and the weight to be
given their testimony, the jury was free to believe or disbelieve all or any
part of any witness=s
testimony.  Sharp v. State, 707 S.W.2d 611, 614 (Tex. Crim. App.
1986); Hawkins v. State, 283 S.W.3d 429, 433-34 (Tex. App.CEastland 2009, pet. ref=d).  Reconciling
conflicting testimony is within the exclusive province of the jury.  Mosley
v. State, 983 S.W.2d 249, 254 (Tex. Crim. App. 1998).  We overrule
appellant=s sole
issue.

                                                               This
Court=s Ruling

We
affirm the trial court=s
judgment.

 

 

TERRY McCALL

JUSTICE

August 6, 2009

Do not publish.  See Tex. R. App. P. 47.2(b).

Panel consists of:  Wright, C.J.,

McCall, J., and Strange, J.