**Opinion filed August 6, 2009**



## In The

# Eleventh Court of Appeals

_____

### No. 11-08-00094-CR

_____

## HOPE COLE, Appellant

## V.

## STATE OF TEXAS, Appellee

**On Appeal from the County Court at Law**

**Ector County, Texas**

**Trial Court Cause No. 07-3689**

### M E M O R A N D U M   O P I N I O N

The jury convicted Hope Cole of the offense of resisting arrest, a Class A misdemeanor. The trial court assessed appellant's punishment at a $1,500 fine. We affirm.

*Background*

A person commits an offense of resisting arrest "if [s]he intentionally prevents or obstructs a person [s]he knows is a peace officer . . . from effecting an arrest . . . of the actor . . . by using force against the peace officer." TEX. PENAL CODE ANN. § 38.03 (Vernon 2003). The information alleged

that appellant "intentionally prevent[ed] or obstruct[ed] JOE GALINDO, a person [appellant] knew to be a peace officer, from effecting an arrest of [appellant], by using force against said peace officer."

*Issue on Appeal*

In her sole appellate issue, appellant challenges the factual sufficiency of the evidence to support her conviction. Appellant concedes that the evidence was legally sufficient to support her conviction.

*Standard of Review*

To determine if the evidence is factually sufficient, the appellate court reviews all of the evidence in a neutral light. *Watson v. State*, 204 S.W.3d 404, 414 (Tex. Crim. App. 2006) (overruling in part *Zuniga v. State*, 144 S.W.3d 477 (Tex. Crim. App. 2004)); *Johnson v. State*, 23 S.W.3d 1, 10-11 (Tex. Crim. App. 2000); *Cain v. State*, 958 S.W.2d 404, 407-08 (Tex. Crim. App. 1997); *Clewis v. State*, 922 S.W.2d 126, 129 (Tex. Crim. App. 1996). Then, the reviewing court determines whether the evidence supporting the verdict is so weak that the verdict is clearly wrong and manifestly unjust or whether the verdict is against the great weight and preponderance of the conflicting evidence. *Watson*, 204 S.W.3d at 414-15; *Johnson*, 23 S.W.3d at 10-11. The jury, as the finder of fact, is the sole judge of the weight and credibility of the witnesses' testimony. TEX. CODE CRIM. PROC. ANN. art. 36.13 (Vernon 2007), art. 38.04 (Vernon 1979).

*Evidence at Trial*

The record shows that the charge against appellant arose from an incident that occurred at the Sherwood swimming pool in Odessa on August 5, 2007. On that date, appellant was at the pool with her baby daughter. Lola Rivera and her teenage sons, Kyle and Robert, also accompanied appellant to the pool. At that time, Efrain Moreno was working as the manager at the pool, Marty Jones was working as an assistant manager at the pool, and Joshua Jimenez was working as a deck supervisor at the pool. While appellant's group was at the pool, a boy nearly drowned in the pool. Pool employees had to rescue the boy from the water and resuscitate him. During the rescue efforts, one of the pool's lifeguards, Zach Dennis, went to the front area of the swimming pool complex to retrieve a backboard, which is like a stretcher, in case it became necessary to use it. Ultimately, the

2

boy was taken to the hospital in an ambulance, and Odessa Police Officer Joe Galindo arrived at the pool to investigate the near-drowning incident.

Following the rescue of the boy, Moreno, Jones, and Jimenez were standing near each other. Jones testified that appellant approached them and asked to speak to a manager. According to Jones, appellant told him that a lifeguard had told her kids in a rude way to get off the backboard. Jimenez testified that appellant told him that a lifeguard had yelled at her kid. Jimenez also testified that the lifeguard (Dennis) told him that a kid was on the backboard when he went to retrieve it, that he had asked the kid to move, and that appellant had started yelling at him when he asked the kid to move. Jones said that appellant was upset and that she was yelling. Jones testified that appellant told them that she did not want to be there because a "bunch of idiots" were running the pool. Moreno testified that, during this confrontation, appellant was using "vulgar language, and yelling, and swearing, and pointing at [the] lifeguards." Moreno said that appellant was causing a "big old commotion" and that he asked her and her party to leave the pool. Appellant and her group left the pool.

Later, appellant and her group returned to the pool with her husband Cody Cole. Moreno, Jones, and Jimenez talked with appellant and Cole. Jones testified that appellant wanted either to get her money back or for her kids to be allowed to swim. Jones said that pool employees were not allowed to give refunds. He said that appellant was still very upset and was yelling degrading things to them. Moreno testified that he would not let appellant and her group inside the swimming pool gates. At that time, Officer Galindo was in the pool office investigating the near-drowning incident.

A pool employee asked Officer Galindo for assistance in connection with the situation involving appellant. Officer Galindo left the office to check on the situation. He said that at least five to six people, including appellant, were present and that, at first, they were all vocal. Officer Galindo said that appellant had a baby in her arms. He also said that appellant "kept on mouthing off and yelling, and screaming, and cussing." Officer Galindo testified that he told appellant to calm down and to be quiet and that he asked her to stop cussing. Officer Galindo said that, when he asked appellant to stop cussing, she said that she was not scared to go to jail. He said that he asked her to stop cussing two times but that she did not stop. Officer Galindo testified that he asked appellant to identify herself and that she responded, "[F]--k you." Officer Galindo said that appellant never calmed down. Officer Galindo decided to arrest her for disorderly conduct.

3

Officer Galindo testified that, because he was going to arrest appellant, he asked her to give the baby to someone else but that appellant refused to do so. Officer Galindo said that he grabbed appellant's wrist "[t]o get control of her, to let her know that this arrest was going to be made." He also said that, at that time, he did not tell appellant that she was under arrest. Officer Galindo testified that appellant pulled away from him and that someone grabbed the baby from appellant. He also said that appellant started swinging at him and slapped him twice in the face. Officer Galindo testified that he threw appellant down to the ground. He also testified that appellant struggled to get away but that he was able to get her handcuffed.

Moreno, Jones, and Jimenez were present during the incident involving Officer Galindo and appellant. In most respects, Moreno's, Jones's, and Jimenez's testimony about the incident was consistent with Officer Galindo's testimony. For example, they all testified that appellant was yelling and cussing. Jones said that Officer Galindo asked appellant several times to stop cussing but that she did not stop. He also said that Officer Galindo asked appellant to put her baby down and that she refused. Jones said that appellant's baby was about three years old. Jones testified that Officer Galindo grabbed appellant's hand after he had asked her several times to put down the baby. Jones said that appellant jerked her hand back, that another lady grabbed the baby, and that appellant then hit Officer Galindo in the face. He also said that he saw appellant hit Officer Galindo one time. Moreno testified that appellant hit Officer Galindo in the face. Moreno also said that he saw appellant punch Officer Galindo in the back of the head a few times. Jimenez testified that Officer Galindo grabbed appellant's arm and that appellant then started fighting with Officer Galindo. Jimenez said that appellant hit Officer Galindo. He also said that he did not know where appellant hit Officer Galindo but that he saw her take swings toward his upper body.

Lola Rivera testified that Officer Galindo put his finger in appellant's face a couple of times and that appellant asked Officer Galindo not to put his finger in her face. Lola said Officer Galindo grabbed appellant's arm. Lola also said that she never saw appellant hit Officer Galindo and that appellant never swung her hand at him. Kyle Rivera testified that Officer Galindo put his finger in appellant's face and that appellant waived her hand in an attempt to get Officer Galindo's finger out of her face. Kyle also said that appellant never hit Officer Galindo. Cody Cole testified that Officer Galindo put his finger in appellant's face on two occasions and that appellant told him to get

4

his finger out of her face. Cole also testified that appellant waived her hands in front of her face when Officer Galindo put his finger in her face.

*Analysis*

Appellant contends that the evidence was factually insufficient to establish that she used force against Officer Galindo while he was effecting an arrest. In applying Section 38.03(a), the essential inquiry is whether the actor has forcibly interfered with the "arrest" transaction or process to bring the actor under control. *Latham v. State*, 128 S.W.3d 325, 329 (Tex. App.—Tyler 2004, no pet.); *Schrader v. State*, 753 S.W.2d 733, 735 (Tex. App.—Austin 1988, pet. ref'd). The legislature intended the expression "effecting an arrest" to encompass the reasonable actions of a peace officer in bringing a person under the officer's control for the purposes of the law. *Latham*, 128 S.W.3d at 329; *Schrader*, 753 S.W.2d at 735. From the moment the peace officer begins his efforts to gain control or physical restraint over the individual until the individual is restrained or controlled, the officer is considered to be "effecting an arrest." *Latham*, 128 S.W.3d at 329; *Bruno v. State*, 922 S.W.2d 292, 294 (Tex. App.—Amarillo 1996, no pet.).

To establish that an officer was in the process of "effecting an arrest," the State must prove that the officer had the intent to arrest and took some action pursuant to that intent. *Latham*, 128 S.W.3d at 329; *Bruno*, 922 S.W.2d at 294. The process does not depend upon the officer verbalizing his intention to arrest. *White v. State*, 601 S.W.2d 364, 366 (Tex. Crim. App. 1980); *Bruno*, 922 S.W.2d at 924. Although not conclusive, the officer's opinion as to whether the person was under arrest is a relevant and important factor to consider. *Latham*, 128 S.W.3d at 329; *Vaughn v. State*, 983 S.W.2d 860, 862 (Tex. App.—Houston [14th Dist.] 1998, no pet.).

Officer Galindo testified that he asked appellant to give her baby to someone else because he was going to arrest her. Officer Galindo said that he grabbed appellant's hand to get control of her and to let her know that he was going to arrest her. Officer Galindo said that, in response, appellant pulled away from him and slapped him in the face twice. Jones testified that Officer Galindo grabbed appellant's hand, that appellant jerked her hand back, and that appellant hit Officer Galindo in the face. Jimenez testified that Officer Galindo grabbed appellant's arm and that appellant then started fighting with Officer Galindo. Based on the evidence, the jury could have reasonably concluded that Officer Galindo was attempting to effect an arrest of appellant when he

5

grabbed appellant's hand and that appellant prevented or obstructed him from effecting the arrest by striking him in the face. Therefore, considering all the evidence in a neutral light, we conclude that the evidence was factually sufficient to support appellant's conviction.

Appellant contends that the seven witnesses at trial gave "significantly different versions of what happened." As the sole judge of the credibility of the witnesses and the weight to be given their testimony, the jury was free to believe or disbelieve all or any part of any witness's testimony. *Sharp v. State*, 707 S.W.2d 611, 614 (Tex. Crim. App. 1986); *Hawkins v. State*, 283 S.W.3d 429, 433-34 (Tex. App.—Eastland 2009, pet. ref'd). Reconciling conflicting testimony is within the exclusive province of the jury. *Mosley v. State*, 983 S.W.2d 249, 254 (Tex. Crim. App. 1998). We overrule appellant's sole issue.

### This Court's Ruling

We affirm the trial court's judgment.

TERRY McCALL
JUSTICE

August 6, 2009

Do not publish. *See* TEX. R. APP. P. 47.2(b).

Panel consists of: Wright, C.J.,
McCall, J., and Strange, J.