

# COURT OF APPEALS
### SECOND DISTRICT OF TEXAS
### FORT WORTH

## NO. 02-11-00371-CR
## NO. 02-11-00372-CR

MAGDALENA MEJIA GUERRERO                                     APPELLANT

V.

THE STATE OF TEXAS                                               STATE

----------

## FROM COUNTY CRIMINAL COURT NO. 1 OF TARRANT COUNTY

----------

## MEMORANDUM OPINION[1]

----------

### I. INTRODUCTION

Appellant Magdalena Mejia Guerrero appeals her convictions for resisting arrest[2] and evading arrest or detention.[3] She raises two issues on appeal

---

[1]See Tex. R. App. P. 47.4.

[2]See Tex. Penal Code Ann. § 38.03(a) (West 2011).

[3]See Tex. Penal Code Ann. § 38.04(a) (West Supp. 2012).

challenging the sufficiency of the evidence to support her convictions. We will affirm.

## II. BACKGROUND

Benbrook police officer Michael Mullinax, the complainant, testified at trial. According to Mullinax, he was on patrol January 12, 2011, at roughly 8:00 p.m., when he received a call to assist other officers regarding a criminal mischief. As Mullinax was en route to assist, he observed a vehicle matching the description in the call. The vehicle was driven by Guerrero. Mullinax testified that he witnessed Guerrero acting suspicious at an intersection: "It appeared that the vehicle was waiting on me to go -- to choose a direction to go. I proceeded to go north, and [Guerrero] then turned south to go the opposite direction from me." Mullinax also said that he observed Guerrero commit three traffic violations—all failures to properly use her turn signal. As Mullinax maneuvered his patrol car to initiate a traffic stop, Guerrero pulled into a local Taco Bell parking lot. Mullinax said that as he executed a stop, Guerrero parked her car and exited her vehicle.[4]

By Mullinax's account, Guerrero then started walking through the parking lot towards the drive-through, looking back at him several times. Mullinax ordered Guerrero to get back into her vehicle. Guerrero continued walking towards the Taco Bell and away from Mullinax, asking repeatedly why he had stopped her. Mullinax said, "I said, 'Ma'am get back in your vehicle.' [But] [s]he

_____

[4]The video clearly depicts that Mullinax had initiated his overhead lights prior to Guerrero parking and exiting her vehicle.

2

continued to walk, never slowed down, just looked over her shoulder and was asking why I stopped her." Mullinax described Guerrero's pace as "brisk" and explained that he had to "walk faster than her to catch up to her." Mullinax characterized her walking as though she was attempting to flee him. At that point, Mullinax grabbed Guerrero by the arm "to stop her from walking away." Mullinax said that Guerrero pulled away from him and, "fear[ing] that it was going to turn into an altercation, . . . [he] forced her to the ground."

Mullinax testified that Guerrero then began to roll around, causing him to fall and injure his knee. After regaining his balance, Mullinax attempted to place handcuffs on Guerrero. As he grabbed her arm to handcuff her, Guerrero rolled over onto Mullinax's arm, pinning it underneath her body and injuring his thumb. Mullinax recalled that during this time, Guerrero was screaming loudly, repeatedly rolling around, and trying to pull away from him. A portion of the video from Mullinax's in-car camera was played for the jury.[5]

Other officers soon arrived to assist Mullinax, and according to him, Guerrero "started to try to kick" him while the officers were handcuffing her.

_____

[5]This court has watched the video from Mullinax's in-car camera. Nothing in the video contradicts Mullinax's version of the incident. Much of the interaction between Mullinax and Guerrero occurs outside of the camera's view, and thus there is little video footage of the incident. But the audio from the video depicts Mullinax calmly ordering Guerrero to "get back in [her] vehicle" several times prior to him grabbing her. Each time Guerrero responds with "why are you stopping me?" After he grabs her, the audio then depicts Mullinax frequently stating, "Give me your hand." At the same time Guerrero is screaming, "Let go of me." Mullinax responds to Guerrero at one point by stating, "I'm not going to let go of you. Now give me your other hand."

3

Mullinax said that at that time he told her, "[D]on't try to kick me."[6] According to Mullinax, Guerrero continued to try to kick him before the officers tried to search her[7] and again when he attempted to place her in his vehicle. Under cross-examination, Mullinax testified that the video from his in-car camera does not depict Guerrero kicking at him. Mullinax explained that this is so because the video was pointed "straightforward from [his] patrol unit" and that the actions of her kicking toward him were not on the video because they occurred outside the view of the in-car camera.[8]

Patrick Marx, a patrol officer for the City of Benbrook who assisted Mullinax in handcuffing Guerrero, testified as well.[9] Marx said that when he arrived, he witnessed Mullinax and another officer "attempting to take" Guerrero

---

[6]Mullinax can be heard telling Guerrero at one point in the video to "stop kicking." Mullinax makes repeated statements to Guerrero, some of which are inaudible or are drowned out by the frequency and volume of Guerrero's screams.

[7]The video depicts Guerrero pulling into the parking lot and then pausing. She then drives to a marked parking spot, quickly exits her car, and starts walking towards the Taco Bell. The video then captures only a brief moment of Mullinax's attempts to apprehend Guerrero against her struggles and then again once the officers have handcuffed her, when they return to the front of the car and search her person. The camera again loses focus on Mullinax and Guerrero when he apparently is placing her in the back of the patrol vehicle.

[8]Much of the interaction between Mullinax and Guerrero happens outside of the in-car camera's view.

[9]Mullinax testified that four other officers responded to his location because of a 9-1-1 dispatch involving a resisting arrest offense and because of the fact that while entangled with Guerrero, he did not respond to routine calls from other officers.

4

into custody. He said that Guerrero was "kicking and screaming and actively resisting" the other officers' attempts to handcuff her. He said that he could not understand what Guerrero was yelling. Marx joined the efforts to handcuff Guerrero. Marx said that he could not determine who Guerrero was kicking toward: "It was just a continuous kick with her feet and legs and her arms." He also expressed his belief that once the officers had handcuffed Guerrero and had placed her in the backseat of a patrol car, "she began kicking the windows."

Guerrero also testified at trial. According to Guerrero, she intended to be a Taco Bell patron that evening. She also testified that she was not walking toward the drive-through, as Mullinax had testified, but rather the entrance. Although she had heard Mullinax order her to get back in her car "a few" times, she believed she had "not done anything wrong" and said she was proceeding to go into Taco Bell. Guerrero said that she was not walking away from Mullinax, rather actually walking toward him because of the location of the entrance. By Guerrero's account, she encountered Mullinax, and was simply standing next to Mullinax, asking him, "[W]hy are you stopping me," and "out of nowhere . . . he just grabbed me so hard." She stated that she never used any force towards Mullinax.

A jury found Guerrero guilty of resisting arrest and evading arrest or detention. The trial court assessed punishment in each case with a $150 fine and 180 days' confinement but suspended the imposition of sentences and

5

placed Guerrero on community supervision for twelve months. This appeal followed.

### III. Discussion

#### A. Evidentiary Sufficiency Review

In our due-process review of the sufficiency of the evidence to support a conviction, we view all of the evidence in the light most favorable to the verdict to determine whether any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. *Jackson v. Virginia*, 443 U.S. 307, 319, 99 S. Ct. 2781, 2789 (1979); *Isassi v. State*, 330 S.W.3d 633, 638 (Tex. Crim. App. 2010).

#### B. Resisting Arrest

In her first issue, Guerrero contends that the evidence is insufficient to support a conviction for resisting arrest. Specifically, Guerrero contends that the evidence does not support that "the force described in the information was directed at or used against . . . Mullinax."

In the information, the State alleged that Guerrero resisted "arrest or search" . . . by using force against [Mullinax], to-wit: by kicking at [Mullinax] with her foot." To obtain a conviction in this case, the State was thus required to prove that by kicking at Mullinax, Guerrero intentionally prevented or obstructed Mullinax, who she knew was a peace officer, from effecting an arrest or search of Guerrero. Tex. Penal Code Ann. § 38.03(a). A person can forcefully resist an arrest without successfully making physical contact with the officer. *See Sartain*

6

*v. State*, 228 S.W.3d 416, 424 (Tex. App.—Fort Worth 2007, pet. ref'd); *see also Haliburton v. State*, 80 S.W.3d 309, 312–13 (Tex. App. —Fort Worth 2002, no pet.) (holding that a defendant's act of "kicking at" an officer constituted force even though the kick did not connect).

Guerrero contends that "the evidence does not support a rational and reasoned finding that any kicking was directed at or against" Mullinax. Specifically, Guerrero contends that the video does not depict her kicking at Mullinax; that it only contains a statement by Mullinax to Guerrero for her to "stop kicking;" and that it does not contain a statement, as Mullinax testified to, that she stop kicking at him. Furthermore, Guerrero contends that Marx testified that he did not see Guerrero specifically kick at Mullinax. But Mullinax testified that Guerrero did kick at him multiple times. And neither the video nor Marx's testimony contradicts Mullinax's testimony. The jury, as the exclusive judge of the credibility of witnesses and the weight to be given to the evidence, possessed sufficient evidence to find that Guerrero kicked at Mullinax. *Palomo v. State*, 352 S.W.3d 87, 90 (Tex. App. —Houston [14th Dist.] 2011, pet. ref'd). Furthermore, even if Marx's testimony contradicted Mullinax's testimony, this court must give deference to the responsibility of the factfinder to fairly resolve conflicts in testimony, to weigh the evidence, and to draw reasonable inferences from basic facts to ultimate facts. *Wyatt v. State*, 23 S.W.3d 18, 30 (Tex. Crim. App. 2000).

Guerrero also contends that "[t]here is not sufficient evidence to show beyond a reasonable doubt that [Guerrero] intentionally obstructed an arrest."

7

Guerrero's complaint is that she did not know she was being stopped or arrested and that, thus, she could not have resisted the arrest.

In the resisting arrest context, the essential inquiry is whether the actor has forcibly interfered with the "arrest" transaction or process to bring the actor under control. *Latham v. State*, 128 S.W.3d 325, 329 (Tex. App.—Tyler 2004, no pet.); *Schrader v. State*, 753 S.W.2d 733, 735 (Tex. App.—Austin 1988, pet. ref'd). The legislature intended the expression "effecting an arrest" to encompass the reasonable actions of a peace officer in bringing a person under the officer's control for the purposes of the law. *Latham*, 128 S.W.3d at 329; *Schrader*, 753 S.W.2d at 735. From the moment the peace officer begins his efforts to gain control or physical restraint over the individual until the individual is restrained or controlled, the officer is considered to be "effecting an arrest." *Latham*, 128 S.W.3d at 329; *Bruno v. State*, 922 S.W.2d 292, 294 (Tex. App.—Amarillo 1996, no pet.). To establish that an officer was in the process of "effecting an arrest," the State must prove that the officer had the intent to arrest and took some action pursuant to that intent. *Latham*, 128 S.W.3d at 329; *Bruno*, 922 S.W.2d at 294. The process does not depend upon the officer verbalizing his intention to arrest. *White v. State*, 601 S.W.2d 364, 366 (Tex. Crim. App. [Panel Op.] 1980); *Bruno*, 922 S.W.2d at 924. Although not conclusive, the officer's opinion as to whether the person was under arrest is a relevant and important factor to consider. *Latham*, 128 S.W.3d at 329; *Vaughn v. State*, 983 S.W.2d 860, 862–63 (Tex. App.—Houston [14th Dist.] 1998, no pet.).

8

Here, Mullinax testified specifically that he was arresting Guerrero. Furthermore, Mullinax testified that one of the instances of Guerrero's kicking at him occurred after he had grabbed her arm but before the other officers arrived and assisted him in placing handcuffs on her. Thus, the evidence establishes that Guerrero's act of kicking at Mullinax happened after he began his efforts to gain control over Guerrero and prior to him actually gaining restraint over her. Viewing the evidence in the light most favorable to the verdict, we determine that a rational factfinder could have found that Guerrero intentionally prevented or obstructed Mullinax from effecting an arrest by kicking at him as he attempted to gain physical restraint over her. *See Jackson*, 443 U.S. at 319, 99 S. Ct. at 2789; *Isassi*, 330 S.W.3d at 638. We overrule Guerrero's first issue.

### C.    Evading Arrest or Detention

In her second issue, Guerrero contends that the evidence is insufficient to sustain Guerrero's conviction for evading arrest or detention. We disagree. To convict her of the charged offense, the State had to prove that Guerrero intentionally fled from a person she knew to be a peace officer attempting lawfully to arrest or detain her. *See* Tex. Penal Code Ann. § 38.04(a). A defendant's knowledge that a police officer is trying to arrest or detain her is an essential element of the offense of evading arrest. *Rodriguez v. State*, 799 S.W.2d 301, 302 (Tex. Crim. App. 1990); *Hobyl v. State*, 152 S.W.3d 624, 627 (Tex. App.— Houston [1st Dist.] 2004) ("[T]he accused must *know* that the person from whom he flees is a peace officer attempting to arrest or detain him."), *pet. dism'd,*

9

*improvidently granted*, 193 S.W.3d 903 (Tex. Crim. App. 2006). Here, the issue is whether there is sufficient evidence from which the jury could reasonably infer beyond a reasonable doubt that Guerrero knew that Mullinax was trying to arrest or detain her.

Mullinax testified that after he had initiated his traffic stop and pulled into the parking lot, and as he was placing his patrol car in park, Guerrero got out of her car and started walking toward the drive-through of Taco Bell. Mullinax also testified, and the video from his in-car camera verifies, that he told Guerrero multiple times to return to her car. Each time Guerrero responded with, "[W]hy are you stopping me?" Mullinax described Guerrero as having briskly walked away from him and said that he had to walk faster than her to catch her before he grabbed her. Even Guerrero's own testimony confirms that she knew that Mullinax was attempting to detain her but that Guerrero believed that she did not need to comply because she believed that she "had not done anything wrong." In fact, Guerrero did not dispute that she did not intend to stop. Her testimony and her argument on appeal is that she was heading toward the entrance of Taco Bell and not the drive-through as Mullinax testified. The video depicts Guerrero getting out of her vehicle and walking away from Mullinax's patrol car towards the Taco Bell after he had initiated a traffic stop with his overhead lights, and the video also clearly depicts Guerrero walking away from Mullinax as he repeatedly orders her to get back into her vehicle. The reasonable inference from this testimony and from watching the video is that Guerrero knew that

10

Mullinax was attempting to detain her and that she intentionally walked away. *See Duren v. State*, 87 S.W.3d 719, 724 (Tex. App.—Texarkana 2002, pet. struck) (factfinder may use common sense and apply common knowledge, observation, and experience when giving effect to reasonable inferences from the evidence and may infer defendant's knowledge or intent from acts, words, and conduct). Viewing the evidence in the light most favorable to the verdict, we determine that a rational factfinder could have found beyond a reasonable doubt that Guerrero knew that Mullinax was attempting to arrest or detain her. *See Mayfield v. State*, 219 S.W.3d 538, 541 (Tex. App.—Texarkana 2007, no pet.) (observing that law does not require high-speed fleeing or even effectual fleeing; it requires only an attempt to get away from a known officer of the law). We overrule Guerrero's second issue.

## IV. CONCLUSION

Having overruled both of Guerrero's issues, we affirm the trial court's judgments.

BILL MEIER
JUSTICE

PANEL: LIVINGSTON, C.J.; GARDNER and MEIER, JJ.

DO NOT PUBLISH
Tex. R. App. P. 47.2(b)

DELIVERED: August 16, 2012