02-11-371&372-CR









 
 
 
 
 
 
 
 
 
 
 
 
 
 COURT OF APPEALS
 SECOND DISTRICT OF TEXAS
 FORT WORTH
  
 
 


 

 

NO. 02-11-00371-CR

NO. 02-11-00372-CR

 

 


 
 
 Magdalena Mejia Guerrero
 
 
  
 
 
 APPELLANT
 
 
 
 
  
 V.
  
 
 
 
 
 The State of Texas
 
 
  
 
 
 STATE
 
 


 

 

----------

FROM County
Criminal Court No. 1 OF Tarrant COUNTY

----------

MEMORANDUM
OPINION[1]

----------

I.  Introduction

          Appellant
Magdalena Mejia Guerrero appeals her convictions for resisting arrest[2]
and evading arrest or detention.[3]  She raises two
issues on appeal challenging the sufficiency of the
evidence to support her convictions.  We will affirm.

II.  Background

Benbrook
police officer Michael Mullinax, the complainant, testified at trial. 
According to Mullinax, he was on patrol January 12, 2011, at roughly 8:00
p.m., when he received a call to assist other officers regarding a criminal mischief. 
As Mullinax was en route to assist, he observed a vehicle matching the
description in the call.  The vehicle was driven by Guerrero.  Mullinax
testified that he witnessed Guerrero acting suspicious at an intersection:  “It
appeared that the vehicle was waiting on me to go -- to choose a
direction to go.  I proceeded to go north, and [Guerrero] then turned south to
go the opposite direction from me.”  Mullinax also said that he observed
Guerrero commit three traffic violations—all failures to properly use her turn
signal.  As Mullinax maneuvered his patrol car to initiate a traffic stop,
Guerrero pulled into a local Taco Bell parking lot.  Mullinax said that as he
executed a stop, Guerrero parked her car and exited her vehicle.[4]

By
Mullinax’s account, Guerrero then started walking through the parking lot
towards the drive-through, looking back at him several times.  Mullinax ordered
Guerrero to get back into her vehicle.  Guerrero continued walking towards the
Taco Bell and away from Mullinax, asking repeatedly why he had stopped her. 
Mullinax said, “I said, ‘Ma’am get back in your vehicle.’  [But] [s]he
continued to walk, never slowed down, just looked over her shoulder and was
asking why I stopped her.”  Mullinax described Guerrero’s pace as “brisk” and
explained that he had to “walk faster than her to catch up to her.”  Mullinax
characterized her walking as though she was attempting to flee him.  At that
point, Mullinax grabbed Guerrero by the arm “to stop her from walking away.” 
Mullinax said that Guerrero pulled away from him and, “fear[ing] that it was
going to turn into an altercation, . . . [he] forced her to
the ground.”

Mullinax
testified that Guerrero then began to roll around, causing him to fall and
injure his knee.  After regaining his balance, Mullinax attempted to place
handcuffs on Guerrero.  As he grabbed her arm to handcuff her, Guerrero rolled
over onto Mullinax’s arm, pinning it underneath her body and injuring his thumb. 
Mullinax recalled that during this time, Guerrero was screaming loudly,
repeatedly rolling around, and trying to pull away from him.  A portion of the
video from Mullinax’s in-car camera was played for the jury.[5]

Other
officers soon arrived to assist Mullinax, and according to him, Guerrero
“started to try to kick” him while the officers were handcuffing her.  Mullinax
said that at that time he told her, “[D]on’t try to kick me.”[6]  According to Mullinax,
Guerrero continued to try to kick him before the officers tried to search her[7]
and again when he attempted to place her in his vehicle.  Under
cross-examination, Mullinax testified that the video from his in-car camera
does not depict Guerrero kicking at him.  Mullinax explained that this is so
because the video was pointed “straightforward from [his] patrol unit” and that
the actions of her kicking toward him were not on the video because they
occurred outside the view of the in-car camera.[8]

Patrick
Marx, a patrol officer for the City of Benbrook who assisted Mullinax in
handcuffing Guerrero, testified as well.[9] 
Marx said that when he arrived, he witnessed Mullinax and another officer
“attempting to take” Guerrero into custody.  He said that Guerrero was “kicking
and screaming and actively resisting” the other officers’ attempts to handcuff
her.  He said that he could not understand what Guerrero was yelling.  Marx joined
the efforts to handcuff Guerrero.  Marx said that he could not determine who
Guerrero was kicking toward:  “It was just a continuous kick with her
feet and legs and her arms.”  He also expressed his belief that once the
officers had handcuffed Guerrero and had placed her in the backseat of a patrol
car, “she began kicking the windows.”

Guerrero
also testified at trial.  According to Guerrero, she intended to be a Taco Bell
patron that evening.  She also testified that she was not walking toward the drive-through,
as Mullinax had testified, but rather the entrance.  Although she had heard
Mullinax order her to get back in her car “a few” times, she believed she had “not
done anything wrong” and said she was proceeding to go into Taco Bell. 
Guerrero said that she was not walking away from Mullinax, rather actually
walking toward him because of the location of the entrance.  By Guerrero’s
account, she encountered Mullinax, and was simply standing next to Mullinax,
asking him, “[W]hy are you stopping me,” and “out of nowhere . . . he
just grabbed me so hard.”  She stated that she never used any force towards
Mullinax.

A
jury found Guerrero guilty of resisting arrest and evading arrest or
detention.  The trial court assessed punishment in each case with a $150 fine
and 180 days’ confinement but suspended the imposition of sentences and placed
Guerrero on community supervision for twelve months.  This appeal followed.

III.  Discussion

A.      Evidentiary
Sufficiency Review

In
our due-process review of the sufficiency of the evidence to support a
conviction, we view all of the evidence in the light most favorable to the
verdict to determine whether any rational trier of fact could have found the
essential elements of the crime beyond a reasonable doubt.  Jackson v.
Virginia, 443 U.S. 307, 319, 99 S. Ct. 2781, 2789 (1979); Isassi v.
State, 330 S.W.3d 633, 638 (Tex. Crim. App. 2010).

B.      Resisting
Arrest

In
her first issue, Guerrero contends that the evidence is insufficient to support
a conviction for resisting arrest.  Specifically, Guerrero contends that the
evidence does not support that “the force described in the information was
directed at or used against . . . Mullinax.”

In
the information, the State alleged that Guerrero resisted “arrest or
search” . . . by using force against [Mullinax], to-wit:  by
kicking at [Mullinax] with her foot.”  To obtain a conviction in this case, the
State was thus required to prove that by kicking at Mullinax, Guerrero
intentionally prevented or obstructed Mullinax, who she knew was a peace
officer, from effecting an arrest or search of Guerrero.  Tex. Penal Code Ann.
§ 38.03(a).  A person can forcefully resist an arrest without successfully
making physical contact with the officer.  See Sartain v. State, 228
S.W.3d 416, 424 (Tex. App.—Fort Worth 2007, pet. ref’d); see also Haliburton
v. State, 80 S.W.3d 309, 312–13 (Tex. App. —Fort Worth 2002, no pet.)
(holding that a defendant’s act of “kicking at” an officer constituted force
even though the kick did not connect).

Guerrero
contends that “the evidence does not support a rational and reasoned finding
that any kicking was directed at or against” Mullinax.  Specifically, Guerrero
contends that the video does not depict her kicking at Mullinax; that it only
contains a statement by Mullinax to Guerrero for her to “stop kicking;” and
that it does not contain a statement, as Mullinax testified to, that she stop
kicking at him.  Furthermore, Guerrero contends that Marx testified that he did
not see Guerrero specifically kick at Mullinax.  But Mullinax testified that
Guerrero did kick at him multiple times.  And neither the video nor Marx’s
testimony contradicts Mullinax’s testimony.  The jury, as the exclusive judge
of the credibility of witnesses and the weight to be given to the evidence,
possessed sufficient evidence to find that Guerrero kicked at Mullinax.  Palomo
v. State, 352 S.W.3d 87, 90 (Tex. App. —Houston [14th Dist.] 2011, pet. ref’d). 
Furthermore, even if Marx’s testimony contradicted Mullinax’s testimony, this
court must give deference to the responsibility of the factfinder to fairly
resolve conflicts in testimony, to weigh the evidence, and to draw reasonable
inferences from basic facts to ultimate facts.  Wyatt v. State, 23
S.W.3d 18, 30 (Tex. Crim. App. 2000).

Guerrero
also contends that “[t]here is not sufficient evidence to show beyond a
reasonable doubt that [Guerrero] intentionally obstructed an arrest.” 
Guerrero’s complaint is that she did not know she was being stopped or arrested
and that, thus, she could not have resisted the arrest.

In
the resisting arrest context, the essential inquiry is whether the actor has
forcibly interfered with the “arrest” transaction or process to bring the actor
under control.  Latham v. State, 128 S.W.3d 325, 329 (Tex. App.—Tyler
2004, no pet.); Schrader v. State, 753 S.W.2d 733, 735 (Tex. App.—Austin
1988, pet. ref’d).  The legislature intended the expression “effecting an
arrest” to encompass the reasonable actions of a peace officer in bringing a
person under the officer’s control for the purposes of the law.  Latham,
128 S.W.3d at 329; Schrader, 753 S.W.2d at 735.  From the moment the
peace officer begins his efforts to gain control or physical restraint over the
individual until the individual is restrained or controlled, the officer is
considered to be “effecting an arrest.”  Latham, 128 S.W.3d at 329; Bruno
v. State, 922 S.W.2d 292, 294 (Tex. App.—Amarillo 1996, no pet.).  To
establish that an officer was in the process of “effecting an arrest,” the
State must prove that the officer had the intent to arrest and took some action
pursuant to that intent.  Latham, 128 S.W.3d at 329; Bruno, 922
S.W.2d at 294.  The process does not depend upon the officer verbalizing his
intention to arrest.  White v. State, 601 S.W.2d 364, 366 (Tex. Crim. App.
[Panel Op.] 1980); Bruno, 922 S.W.2d at 924.  Although not conclusive,
the officer’s opinion as to whether the person was under arrest is a relevant and
important factor to consider.  Latham, 128 S.W.3d at 329; Vaughn v.
State, 983 S.W.2d 860, 862–63 (Tex. App.—Houston [14th Dist.] 1998, no
pet.).

Here,
Mullinax testified specifically that he was arresting Guerrero.  Furthermore,
Mullinax testified that one of the instances of Guerrero’s kicking at him
occurred after he had grabbed her arm but before the other officers arrived and
assisted him in placing handcuffs on her.  Thus, the evidence establishes that
Guerrero’s act of kicking at Mullinax happened after he began his efforts to
gain control over Guerrero and prior to him actually gaining restraint over
her.  Viewing the evidence in the light most favorable to the verdict, we
determine that a rational factfinder could have found that Guerrero
intentionally prevented or obstructed Mullinax from effecting an arrest by
kicking at him as he attempted to gain physical restraint over her.  See Jackson,
443 U.S. at 319, 99 S. Ct. at 2789; Isassi, 330 S.W.3d at 638.  We
overrule Guerrero’s first issue.

C.      Evading
Arrest or Detention

In
her second issue, Guerrero contends that the evidence is insufficient to
sustain Guerrero’s conviction for evading arrest or detention.  We disagree.  To
convict her of the charged offense, the State had to prove that Guerrero intentionally
fled from a person she knew to be a peace officer attempting lawfully to arrest
or detain her.  See Tex. Penal Code Ann. § 38.04(a).  A defendant’s
knowledge that a police officer is trying to arrest or detain her is an essential
element of the offense of evading arrest.  Rodriguez v. State, 799
S.W.2d 301, 302 (Tex. Crim. App. 1990); Hobyl v. State, 152 S.W.3d 624,
627 (Tex. App.—Houston [1st Dist.] 2004) (“[T]he accused must know that
the person from whom he flees is a peace officer attempting to arrest or detain
him.”), pet. dism’d, improvidently granted, 193 S.W.3d 903 (Tex. Crim. App.
2006).  Here, the issue is whether there is sufficient evidence from which the
jury could reasonably infer beyond a reasonable doubt that Guerrero knew that Mullinax
was trying to arrest or detain her.

Mullinax
testified that after he had initiated his traffic stop and pulled into the
parking lot, and as he was placing his patrol car in park, Guerrero got out of
her car and started walking toward the drive-through of Taco Bell.  Mullinax
also testified, and the video from his in-car camera verifies, that he told Guerrero
multiple times to return to her car.  Each time Guerrero responded with, “[W]hy
are you stopping me?”  Mullinax described Guerrero as having briskly walked
away from him and said that he had to walk faster than her to catch her before
he grabbed her.  Even Guerrero’s own testimony confirms that she knew that
Mullinax was attempting to detain her but that Guerrero believed that she did
not need to comply because she believed that she “had not done anything wrong.”
 In fact, Guerrero did not dispute that she did not intend to stop.  Her
testimony and her argument on appeal is that she was heading toward the
entrance of Taco Bell and not the drive-through as Mullinax testified.  The video
depicts Guerrero getting out of her vehicle and walking away from Mullinax’s
patrol car towards the Taco Bell after he had initiated a traffic stop with his
overhead lights, and the video also clearly depicts Guerrero walking away from
Mullinax as he repeatedly orders her to get back into her vehicle.  The
reasonable inference from this testimony and from watching the video is that
Guerrero knew that Mullinax was attempting to detain her and that she intentionally
walked away.  See Duren v. State, 87 S.W.3d 719, 724 (Tex. App.—Texarkana
2002, pet. struck) (factfinder may use common sense and apply common knowledge,
observation, and experience when giving effect to reasonable inferences from
the evidence and may infer defendant’s knowledge or intent from acts, words,
and conduct).  Viewing the evidence in the light most favorable to the verdict,
we determine that a rational factfinder could have found beyond a reasonable
doubt that Guerrero knew that Mullinax was attempting to arrest or detain her. 
See Mayfield v. State, 219 S.W.3d 538, 541 (Tex. App.—Texarkana 2007, no
pet.) (observing that law does not require high-speed fleeing or even effectual
fleeing; it requires only an attempt to get away from a known officer of the
law).  We overrule Guerrero’s second issue.

IV. 
Conclusion

Having overruled both of Guerrero’s issues,
we affirm the trial court’s judgments.

 

 

BILL MEIER
JUSTICE

 

PANEL:  LIVINGSTON, C.J.; GARDNER and MEIER, JJ.

 

DO NOT PUBLISH

Tex. R. App.
P. 47.2(b)

 

DELIVERED: 
August 16, 2012









[1]See Tex. R. App. P. 47.4.





[2]See Tex. Penal Code
Ann. § 38.03(a) (West 2011).





[3]See Tex. Penal Code
Ann. § 38.04(a) (West Supp. 2012).





[4]The video clearly depicts
that Mullinax had initiated his overhead lights prior to Guerrero parking and
exiting her vehicle.





[5]This court has watched the
video from Mullinax’s in-car camera.  Nothing in the video contradicts
Mullinax’s version of the incident.  Much of the interaction between Mullinax
and Guerrero occurs outside of the camera’s view, and thus there is little
video footage of the incident.  But the audio from the video depicts Mullinax
calmly ordering Guerrero to “get back in [her] vehicle” several times prior to
him grabbing her.  Each time Guerrero responds with “why are you stopping me?” 
After he grabs her, the audio then depicts Mullinax frequently stating, “Give
me your hand.”  At the same time Guerrero is screaming, “Let go of me.” 
Mullinax responds to Guerrero at one point by stating, “I’m not going to let go
of you.  Now give me your other hand.”





[6]Mullinax can be heard
telling Guerrero at one point in the video to “stop kicking.”  Mullinax makes
repeated statements to Guerrero, some of which are inaudible or are drowned out
by the frequency and volume of Guerrero’s screams.





[7]The video depicts Guerrero
pulling into the parking lot and then pausing.  She then drives to a marked
parking spot, quickly exits her car, and starts walking towards the Taco Bell. 
The video then captures only a brief moment of Mullinax’s attempts to apprehend
Guerrero against her struggles and then again once the officers have handcuffed
her, when they return to the front of the car and search her person.  The
camera again loses focus on Mullinax and Guerrero when he apparently is placing
her in the back of the patrol vehicle.





[8]Much of the interaction
between Mullinax and Guerrero happens outside of the in-car camera’s view.





[9]Mullinax testified that
four other officers responded to his location because of a 9-1-1 dispatch
involving a resisting arrest offense and because of the fact that while
entangled with Guerrero, he did not respond to routine calls from other
officers.