**Affirmed and Memorandum Opinion filed April 23, 2024**



In The

# Fourteenth Court of Appeals

---

## NO. 14-22-00851-CR

---

**ANDRE TERRELL MALONE, Appellant**

**V.**

**THE STATE OF TEXAS, Appellee**

---

**On Appeal from the County Court No. 2**
**Galveston County, Texas**
**Trial Court Cause No. MD-399605**

---

## M E M O R A N D U M   O P I N I O N

Appellant Andre Terrell Malone appeals his conviction for resisting arrest. A jury found appellant guilty, and the trial court assessed punishment pursuant to a plea bargain on sentencing only at 90 days in jail. In a single issue, appellant contends that he could not be charged with resisting arrest when he was never informed that he was under arrest. We affirm.

## *Background*

On April 24, 2021, appellant went to Galveston to attend "Slab Fest."[1] While driving on the Seawall, four officers in a parked, marked unit witnessed appellant swerving lanes. After nearly hitting the parked unit, the officers decided to pursue appellant's vehicle to conduct a traffic stop. Appellant was initially going to be stopped for failing to maintain a single lane, but while the officers followed appellant, they observed that his vehicle registration was expired, and he failed to comply with a stop light. During the traffic stop, appellant refused to cooperate with the officers, apparently asserting his right to remain silent. But, he did not in fact remain silent. Instead, he asked why the officers conducted the traffic stop and refused to identify himself when questioned.

Kristopher Pompa, one of the officers in the four-man team that initiated the traffic stop, advised appellant that he was "passively resisting arrest" by failing to identify himself. Over the course of several minutes, the officers gave appellant multiple commands to exit the vehicle. By this time, at least eight officers were present at the scene—some of which were requested by appellant during a 911 call— to assist with the traffic stop. Appellant refused to comply and directed the female passenger in the vehicle to not comply with the officers' orders, insisting that the officers should give him a ticket and let him go, despite refusing to provide identifying information needed for the ticket.

After reaching an impasse, Pompa made the decision to remove appellant from the vehicle and arrest him. Pompa indicated that appellant committed several "arrestable offenses" but did not announce which offense appellant was being arrested for. Appellant was forcibly removed from the vehicle, and a physical

---

[1] Slab Fest is an annual car show. "Slab" is an acronym for "slow, loud, and banging" and describes the types of vehicles associated with Slab Fest.

altercation between appellant and several officers ensued while the officers attempted to gain control over appellant's movements and hands. Once appellant's hands were secured in handcuffs, Pompa escorted appellant to a patrol unit and announced that appellant was being arrested for resisting arrest. Appellant was transported to the county jail and identified. The officers learned that appellant had an active warrant for driving with an invalid license.

At trial, the State called the four-officer team, as well as four other officers who were present at the scene to testify. Each of the officers that testified was employed with the Galveston Police Department and equipped with a body camera. The body camera videos that documented the interaction between appellant and the officers were admitted into evidence and played in open court. As the videos played, each of the officers detailed their role in the traffic stop. Pompa testified that he and another officer, Matthew Cauley, reached in the vehicle to remove appellant. While the officers attempted to remove appellant, appellant pulled away and grabbed the steering wheel. Matthew Whiting, one of the responding officers, testified that he initiated his taser once appellant pulled away from Pompa and Cauley. Brad Stroud, who is Whiting's partner, explained that the taser deployed by Whiting did not appear to be effective because one of the probes did not properly connect. Stroud gave appellant commands to get on the ground, but appellant did not readily comply. The officers forced appellant to the ground, and Stroud testified that appellant was "actively resisting, pushing up, rolling over, [and] not complying." While on the ground, Stroud asserted that he and the officers struggled to gain control of appellant, indicating that appellant was very strong. Stroud administered some dry stuns to appellant's back and shoulder area in an effort to gain compliance. When the officers finally gained control over appellant, Pompa informed him that he was under arrest for resisting arrest. After making this announcement, Pompa testified that appellant

3

pushed against him and resisted his efforts to escort appellant to the patrol unit.

At the conclusion of the State's case-in-chief, appellant moved for a directed verdict, arguing that the State failed to prove intent or that the officers informed appellant of the reason for his arrest. The trial court denied appellant's motion. Appellant did not present any witnesses and rested. Following closing arguments, the jury retired to deliberate. The jury found appellant guilty of resisting arrest as alleged in the information. The State and appellant agreed to punishment of 90 days confinement in jail.

## *Discussion*

As stated, appellant raises a single issue on appeal, alleging that the jury could not rationally have found him guilty. Underpinning appellant's argument is his assertion that he could not be guilty of resisting arrest when he was never informed that he was under arrest. Appellant's argument is not a model of clarity, but the focus of his argument is apparently on whether the officers were effecting an arrest at the time appellant used force to resist the officers' efforts. We therefore interpret appellant's issue as a challenge to the sufficiency of the evidence to support his conviction.

In reviewing evidentiary sufficiency, we consider all the evidence in the light most favorable to the verdict and determine whether, based on that evidence and reasonable inferences therefrom, a rational trier of fact could have found the challenged element or elements of the crime beyond a reasonable doubt. *See Whatley v. State*, 445 S.W.3d 159, 166 (Tex. Crim. App. 2014); *see also Jackson v. Virginia*, 443 U.S. 307, 318–19 (1979). In reviewing historical facts that support conflicting inferences, we presume that the jury resolved any conflicts in the State's favor and defer to that resolution. *Whatley*, 445 S.W.3d at 166. We do not sit as a thirteenth juror and may not substitute our judgment for that of the factfinder by reevaluating

4

the weight and credibility of the evidence. *Isassi v. State*, 330 S.W.3d 633, 638 (Tex. Crim. App. 2010). As judge of the credibility of the witnesses, a jury may choose to believe all, some, or none of the testimony presented. *Cain v. State*, 958 S.W.2d 404, 407 n.5 (Tex. Crim. App. 1997).

Under Section 38.03(a) of the Texas Penal Code, a person commits the offense of resisting arrest, search, or transportation if

> he intentionally prevents or obstructs a person he knows is a peace officer or a person acting in a peace officer's presence and at his direction from effecting an arrest, search, or transportation of the actor or another by using force against the peace officer or another.

Tex. Penal Code § 38.03(a). The section creates just one offense that can be committed in three different ways; it does not create three separate offenses. *E.g.*, *Hartis v. State*, 183 S.W.3d 793, 797–99 (Tex. App.—Houston [14th Dist.] 2005, no pet.); *Finster v. State*, 152 S.W.3d 215, 218–19 (Tex. App.—Dallas 2004, no pet.). The essence of the crime is the use of force against an officer. *See* Tex. Penal Code § 38.03(a); *Finley v. State*, 484 S.W.3d 926, 927–28 (Tex. Crim. App. 2016); *see also Pyykola v. State*, 814 S.W.2d 462, 464 (Tex. App.—Houston [14th Dist.] 1991, pet. ref'd). To show that appellant used force in resisting arrest, the State had to prove that appellant used "violence or physical aggression, or an immediate threat thereof, in the direction of and/or into contact with, or in opposition or hostility to, a peace officer." *See Dobbs v. State*, 434 S.W.3d 166, 171 (Tex. Crim. App. 2014).

The amended information in this case specifically alleged that "on or about the 24th day of April, 2021, [appellant] did then and there intentionally prevent or obstruct Ofc. Pompa and/or Ofc. Cauley and/or Ofc. Ewing and/or Ofc. Stroud, a person the defendant knew to be a peace officer, from effecting an arrest of the defendant, by using force against said peace officer." Appellant argues on appeal that the evidence presented was insufficient to show that he intentionally prevented

5

the officers from arresting him because he did not know that he was being placed under arrest. He maintains that he was unaware that he was under arrest and, therefore, could not have resisted arrest under section 38.03(a). Appellant suggests that he was simply being detained for traffic violations.

"To establish that an officer was in the process of effecting an arrest, the State must prove that the officer had a preexisting intent to arrest the defendant and took some action pursuant to that intent." *Menjivar v. State*, No. 11–13–00378–CR, 2015 WL 7185532, at *2 (Tex. App.—Eastland Nov. 12, 2015, no pet.) (mem. op., not designated for publication). An arrest is a process that starts when the peace officer begins to make efforts to arrest the suspect and ends once the officer's efforts to restrain or control the suspect are completed. *See Medford v. State*, 13 S.W.3d 769, 772–73 (Tex. Crim. App. 2000); *Latham v. State*, 128 S.W.3d 325, 329 (Tex. App.—Tyler 2004, no pet.). A conviction for resisting arrest requires the force to occur after the arrest begins but before it ends. *Latham*, 128 S.W.3d at 329; *In re M.C.L.*, 110 S.W.3d 591, 596 (Tex. App.—Austin 2003, no pet.). There is no bright-line test in determining whether a particular encounter amounts to an arrest, but courts typically consider several factors, such as the amount of force used to control the suspect, the duration of the detention, and the officer's expressed intent, i.e., whether he told the individual that he was under arrest or was being detained only for a temporary investigation. *Crofton v. State*, 541 S.W.3d 376, 379 (Tex. App.—Houston [14th Dist.] 2017, no pet.). Whether a particular encounter amounts to an arrest depends on whether a reasonable person would believe the seizure would be brief given the totality of the circumstances. *Id.* (citing *Vaughn v. State*, 983 S.W.2d 860, 862 (Tex. App.—Houston [14th Dist.] 1998, no pet.)).

Based on Pompa's testimony, he did not intend to arrest appellant when he initially pulled him over for the traffic violations, though appellant committed

several "arrestable offenses." But, after several minutes of instructing appellant to identify himself and exit the vehicle, Pompa testified that he made the decision to arrest appellant before the officers had to forcibly remove appellant from the vehicle. Once the decision was made, Pompa and Cauley attempted to grab appellant's arm. Appellant pulled away and grabbed the steering wheel to resist the officers' efforts. Whiting initiated the taser, which appeared to have little effect on appellant. Stroud also administered some dry stuns to appellant's back and shoulder area in an effort to gain compliance. Notwithstanding the fact that he was tased, appellant still did not cooperate with the officers and attempted to stand up, despite the officers' orders to lay on his stomach. While on the ground, appellant tucked his hands under his chest to avoid being handcuffed and pushed against the ground, attempting to stand up. When appellant's hands were finally secured in handcuffs, Pompa informed appellant that he was being arrested for resisting arrest. While the officers escorted appellant to patrol unit, he continued to resist the officers and refused to place his legs inside the patrol unit.

The jury, as the trier of fact, was the sole judge of the credibility of the witnesses and of the weight to be given to their testimony. Tex. Code Crim. Proc. art. 36.13. The jury could have inferred that Pompa was effecting an arrest when he made the decision to forcibly remove appellant from the vehicle after several minutes of requesting that appellant identify himself and exit the vehicle. *See Crofton*, 541 S.W.3d at 379 (identifying several factors, such as the amount of force and duration of the detention, in determining when an encounter amounts to an arrest). The jury could have reasonably inferred that appellant used force against Pompa and the other officers. While the officers attempted to gain control of appellant and secure his hands with handcuffs, appellant struggled with the officers and attempted to grab Cauley's taser. Finally, the jury was entitled to draw

7

reasonable inferences from the evidence. *See Whatley*, 445 S.W.3d at 166; *Jackson*, 433 U.S. at 319. Several of the officers' body camera videos were admitted into evidence, and the jury saw multiple perspectives of appellant's interactions with the officers. Reviewing the evidence in the light most favorable to the verdict, we hold that a rational trier of fact could have found beyond a reasonable doubt that appellant intentionally prevented Pompa, a person appellant knew to be a peace officer, from effecting an arrest by using force against Pompa and the other officers.

To the extent that appellant's issue on appeal is he was never informed that he was under arrest, we note that section 38.03 does not require the State to show that the officer announced his or her intention to arrest, search, or transport the defendant. *See White v. State*, 601 S.W.2d 364, 366 (Tex. Crim. App. 1980); *see also Holzworth v. State*, No. 14-17-00923-CR, 2019 WL 5565192, at *4 (Tex. App.—Houston [14th Dist.] Oct. 29, 2019, pet. ref'd) (mem. op., not designated for publication).[2]

Accordingly, we overrule appellant's sole issue on appeal.

_____

[2] Relying solely on *Willis v. State*, appellant insists that the evidence is insufficient to support a conviction for resisting arrest under section 38.03(a) because Pompa initially informed appellant that he was being detained for traffic violations. No. 11-20-00083-CR, 2022 WL 872207 (Tex. App.—Eastland Mar. 24, 2022, no pet.) (mem. op., not designated for publication). The *Willis* court reversed a conviction for resisting arrest, concluding that:

> [U]nder these circumstances, it is conceivable that a reasonable person in Appellant's position would not have believed himself to be under arrest, because Officer Stubblefield clearly and specifically told him that he was only being detained. Further, to have used force to intentionally prevent or obstruct an officer from effecting an arrest, a reasonable person under the circumstances must also know that he was being arrested.

*Id.* at *5. *Willis*, however, is factually distinguishable from this case. The *Willis* court determined that the evidence demonstrated that the force employed by appellant, in pulling away from the officer, did not occur while the officer was effecting an arrest, but instead occurred either after the officer effected the arrest or prior to the commencement of the arresting process. *Id.* In the case before us, the force employed by appellant occurred while Pompa was effecting an arrest. Further, announcing that appellant is under arrest is not required but is one factor for the factfinder's consideration in determining if and when an arrest took place. *See White*, 601 S.W.2d at 366.

### *Conclusion*

We affirm the trial court's judgment.

/s/ Frances Bourliot
Justice

Panel consists of Justices Bourliot, Zimmerer, and Spain.

Do Not Publish — Tex. R. App. P. 47.2(b).